## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FRANCISCO BENITEZ,

Plaintiffs,

v.

JEROME BOGUCKI, RAYOMOND
SCHALK, PUAL ZACHARIAS, LEE
EPLEN, the CITY OF CHICAGO,
GAIL FEIGER, and COOK COUNTY,

Defendants.

Case No. 23-cv-16896

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Francisco Benitez has sued Defendants Jerome Bogucki, Raymond Schalk, Paul Zacharias, (collectively and with other unknown law enforcement officers, the "Police Officer Defendants"), Gail Feiger (collectively and with other unknown Cook County prosecutors, the "Prosecutor Defendants"), Lee Eplen (and collectively with the Police Officer Defendants and Prosecutor Defendants, the "Individual Defendants"), the City of Chicago, and Cook County (collectively with the Individual Defendants, "Defendants"), alleging multiple violations of 42 U.S.C. § 1983 and bringing Illinois state law claims for willful and wanton conduct, civil conspiracy, respondeat superior, and indemnification. Before the Court is Defendants' motion to dismiss Count IX of the complaint, which alleges that the Individual Defendants engaged in willful and wanton conduct in connection with a murder investigation for which Benitez was wrongfully convicted. For the reasons stated herein, Defendants' motion to dismiss Count IX [52] is denied.

1

## I. Background

The following factual allegations taken from the operative complaint [50] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). On April 28, 1989, two fourteen-year-old boys were shot and killed just a few doors away from their homes. [50] ¶¶ 26-30. Moments before the shooting, Chicago police officers encountered a group of members of the ULOGs, the street gang that controlled the neighborhood. [50] ¶ 31. The officers told the ULOGs to disperse and then drove away. [50] ¶ 31. The shootings occurred moments later, and two nearby officers heard the shots. [50] ¶¶ 31-32. The police officers could not find anyone who witnessed the shooting, but members of the ULOGs told the officers that "Cookie" and "Fat Johnnie" might have had something to do with the shooting. [50] ¶¶ 32-34. Two individuals, Cotto and Rosado, lived nearby and saw someone running southbound on Harding Avenue after the shooting. [50] ¶ 36. Cotto and Rosado could not identify any distinct or distinguishing features of the person, and they saw the individual only for a few seconds at night and under dim street lighting. [50] ¶¶ 37-38.

Chicago Gang Crimes Officer Joseph Sparks learned that Cookie may have been involved in the shooting. [50] ¶ 40. Sparks was aware of Cookie and considered him a viable suspect. [50] ¶ 40. Sparks created a photo array that included a picture of Cookie as well as several "fillers," meaning photos of other individuals who were not suspects, to create a fair photo array. [50] ¶¶ 41-42. One of the fillers was Benitez, who Sparks knew and considered to be a "good kid." [50] ¶¶ 43-45. Benitez was 18

2

years old at the time. [50] ¶ 115. Sparks showed the array to Cotto, and Cotto identified Benitez as the person she saw running southbound on Harding Avenue. [50] ¶ 46.

Benitez alleges that Bogucki and Schalk then embarked on a scheme to frame Benitez and claim he had been a suspect all along. [50] ¶¶ 51. Bogucki and Schalk wrote a police report falsely claiming that Benitez had been a suspect since the beginning of the investigation and conducted lineups in which they got Cotto and Rosado to falsely identify Benitez as the person they saw running southbound down Harding Avenue. [50] ¶¶ 52-55. The false police reports were prepared under supervision of, and approved by, Defendant Epplen. [50] ¶ 56.

Bogucki and Schalk interrogated Benitez about the crime on August 29, 1989. [50] ¶¶ 58-59. Benitez told the officers that he was not involved in the shooting and knew nothing about it, and that he had been with a woman named Tomasa and her daughter the night of the murder. [50] ¶¶ 60. Tomasa confirmed Benitez's alibi. [50] ¶ 63.

Defendants Bogucki and Schalk continued to interrogate Benitez overnight and ignored his repeated denials. [50] ¶ 65-70. When Defendant Feiger, the Assistant State's Attorney assigned to the case, interviewed Benitez, he continued to deny any involvement in the shooting. [50] ¶ 67. Feiger did not take a statement or otherwise document Benitez's repeated denials or his alibi. [50] ¶ 68. Bogucki and Schalk kept Benitez locked in the interrogation room all night without sleep and ignored his requests to speak to his mother. [50] ¶¶ 72-73. Bogucki and Schalk falsely promised

3

Benitez that if he admitted to the shooting, but claimed he did it in self-defense, he would be released. [50] ¶ 75.

The next morning, Benitez finally agreed to admit to the false story. [50] ¶ 76. Bogucki and Schalk called Feiger back to the interrogation room to interview Benitez. [50] ¶ 77. Feiger wrote out a false statement and had Benitez sign it. [50] ¶ 78. The story was contrary to the crime scene evidence and known facts about the crime, and Feiger disregarded the evidence that showed Benitez's confession was false. [50] ¶¶ 82-83. Feiger also knew that Benitez had denied involvement in the crime, that he had an alibi, and that he only made the confession after a full night of interrogation from Bogucki and Schalk. [50] ¶ 84.

To further fabricate Benitez's involvement with the crime, Defendant Zacharias falsely claimed he went with Benitez to an alley near the shooting and that Benitez showed Zacharias where he discarded the murder weapon. [50] ¶ 88. This never happened, and no murder weapon was ever recovered. [50] ¶ 91. Benitez was nonetheless charged with the murders and found guilty on all counts. [50] ¶ 113. Benitez took the stand during his trial and testified to his innocence and Defendants' misconduct. [50] 111. After he was found guilty, the State sought the death penalty. [50] 113. Instead, Benitez was sentenced to life in prison, and he served three decades for a crime he did not commit. [50] ¶¶ 114-115.

In fact, two brothers who lived a few doors down from where the shooting occurred saw the entire event. [50] ¶ 95. They saw a member of the ULOGs shoot the two victims and then flee north on Harding Avenue. [50] ¶¶ 97-98. The shooter later

4

admitted to one of the brothers that he had killed the victims. [50] ¶ 100. The individual that Cotto and Rosado saw fleeing south on Harding Avenue was in fact one of the victims of the shooting, who was trying to go back to his home and who later died on his front steps. [50] ¶ 105. The brothers came forward with the truth only after learning that Benitez had been serving in prison for decades. [50] ¶ 103.

Benitez filed a petition for post-conviction relief in June 2022, and after an extensive evidentiary hearing, the Cook County Circuit Court vacated his conviction on the grounds of actual innocence. [50] ¶¶ 121-123. The State entered a motion of *noelle prosqui* and dismissed all charges against Benitez, and Benitez received a certificate of innocence from the state of Illinois. [50] ¶¶ 124-125.

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins.*

5

*Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. Analysis

Defendants move to dismiss Count IX of the amended complaint, which alleges that the Police Officer Defendants and Prosecutor Defendants had a duty to refrain from willful and wanton conduct in connection with the murder investigation, and that both sets of Defendants violated that duty.[1] Defendants argue that Count IX should be dismissed because there is no separate, independent tort of willful and wanton conduct in Illinois, and because Benitez fails to adequately allege a duty owed to Plaintiff that is recognized under Illinois law. [52] at 3-4.[2] The Court disagrees.

---

[1] Defendant Feiger moved to dismiss Count IX on April 1, 2024. [52]. Defendants Bogucki, Epplen, Schalk, Zacharias, and the City of Chicago joined the motion to dismiss on April 12, 2024. [65].

[2] Defendants also argue that because Count IX should be dismissed, there is no remaining basis to impose vicarious liability against the City in Counts XI and XII for any willful and

6

### A. Viability of a claim for willful and wanton conduct

Defendants first argue that "there is no separate, independent tort of willful and wanton conduct." [52] at 3 (citing *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 887 (Ill. 2012)). Defendants are correct. "Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Jane Doe-3*, 973 N.E.2d at 887. But any argument that this formal distinction requires dismissal "is a non-starter" because Illinois courts allow a claim for willful and wanton conduct to proceed "as an aggravated form of negligence [when it is] pleaded as such by alleging the basic elements of a negligence claim—duty, breach, causation—as well as 'either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare.'" *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 WL 348320, at *4 (S.D. Ill. Jan. 20, 2023) (quoting *Jane Doe-3*, 973 N.E.2d at 887). And federal pleading rules require that plaintiffs "need only plead facts, not legal theories, in their complaints." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir.2010)). The relevant question, then, is whether Benitez has pled sufficient facts to state a claim for aggravated negligence under Illinois law. The fact that Count IX of the complaint alleges "willful and wanton conduct" is not on its own a basis for dismissal.

### B. Establishing a duty to refrain from willful and wanton conduct

---

wanton conduct claims. The Court declines to address this argument because Defendants' motion to dismiss Count IX is denied.

Having established that the form of Count IX is not a reason for dismissal, the Court turns next to Defendants' substantive arguments. Defendants contest only one element of an aggravated negligence claim: whether Benitez has alleged a cognizable duty under Illinois law. The Court holds that he has.

In Illinois, the question of whether a duty exists is a question of law to be decided by the court. *Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267 (Ill. 1996). "'[T]he existence of a duty is not a discoverable fact of nature,' but, rather, involves considerations of public policy." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006)). "In resolving whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other." *Rhodes*, 665 N.E.2d at 1267 (citing *Vesey v. Chicago Housing Authority*, 583 N.E.2d 538 (1991)). "Four factors inform this inquiry: (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden upon the defendant." *Forsythe v. Clark USA, Inc.*, 864 N.E. 2d 227, 232 (Ill. 2007) (citing *Marshall*, 856 N.E.2d at 1057). Courts assess these factors to determine "whether a duty ran from the defendant to the plaintiff." *Simpkins*, 965 N.E.2d at 1098.

Defendants do not engage with these factors and instead rely on *Fletcher v. Bogucki* and *Jackson v. Wojcik* to argue that Benitez's allegations of a duty to refrain from willful and wanton conduct are insufficient to state a negligence claim. [52] at

8

4. In *Fletcher*, the plaintiff's willful and wanton conduct allegations were similar in part to Benitez's here: Fletcher likewise alleged he was wrongfully convicted in Chicago and that the individual defendants "had a duty to refrain from willful and wanton conduct in connection with the [underlying] murder investigation." 1:20-cv-04768, Dkt. No. 1, ¶ 186. Fletcher also alleged that the defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard, of his rights, and that he was injured as a result. *Id*. ¶¶ 187-88. The *Fletcher* court held these allegations were "too vague to support a negligence claim." *Fletcher v. Bogucki*, No. 20-CV-04768, 2021 WL 4477968, at *8 (N.D. Ill. Sept. 30, 2021). In *Jackson*, the plaintiff's willful and wanton allegations were identical to those in *Fletcher*, with only minor changes made for the names of the defendants. *See Jackson v. Wojcik*, 1:23-cv-02027, Dkt. No. 1, ¶ 195-98. The *Jackson* court "agree[d] with the *Fletcher* court's approach and [found] that the vague language [was] insufficient to plead the elements of a negligence claim." *Jackson v. Wojcik*, 1:23-CV-02027, Dkt. #126, at 5-6 (N.D. Ill. February 6, 2023). Defendants argue that Benitez's allegations "with respect to the alleged duties owed is identical to that language in *Fletcher* and *Jackson*," and that the Court should thus dismiss Count IX. [52] at 4.

Importantly, neither *Fletcher* nor *Jackson* held that police officers and prosecutors do *not* have a duty to refrain from willful and wanton conduct in a murder investigation. They held only that the plaintiffs' allegations were too vague to state a claim for negligence. Benitez's allegations go beyond the plaintiffs' in *Fletcher* and *Jackson*. Like plaintiffs in both of those cases, Benitez alleged that "the Police Officer

Defendants and the Prosecutor Defendants had a duty to refrain from willful and wanton conduct in connection with the murder investigation." [50] ¶ 232. But Benitez further alleges that "it was foreseeable to [Defendants] that fabricating evidence, coercing a false confession, and suppressing exculpatory evidence, in addition to the other misconduct alleged in [the complaint], in order to frame [Benitez], would inevitably result in extreme harm to him," and that "[a]voiding this injury to [Benitez] would not have burdened the Police Officer Defendants or the Prosecutor Defendants in any way." [50] ¶ 233. These allegations are not vague. To the contrary, the allegations describe the specific actions that Defendants took—fabricating evidence, coercing a false confession, and suppressing exculpatory evidence—that could give rise to a duty under the factors that the Illinois Supreme Court has articulated. And at least one other court in this district has allowed an aggravated negligence claim to proceed against police officer defendants where plaintiffs alleged a duty to refrain from willful and wanton conduct. *See Stevenson v. Chicago*, No. 17 CV 4839, 2018 WL 1784142, *10 (N.D. Ill. Apr. 13, 2018).

Notwithstanding the substantive differences between the allegations in this instant case and in *Jackson* and *Fletcher*, the Court understands from Illinois caselaw that it can only find a duty exists after considering the Illinois Supreme Court's four-factor framework. *Forsythe*, 864 N.E. 2d at 232. "Four factors inform this inquiry: (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden upon the defendant." *Id*. The question for the Court to answer is whether

Case: 1:23-cv-16896 Document #: 91 Filed: 12/03/24 Page 11 of 15 PageID #:1009


under those factors, "a duty ran from the defendant[s] to the plaintiff." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012).

### i. Reasonable Foreseeability of the Injury

The first factor the Court must consider in determining whether Defendants owed Benitez a duty is the reasonable foreseeability of the injury. Foreseeability is "necessary factor to finding a duty." *Simpkins*, 965 N.E.2d at 1098. "If the injury was not reasonably foreseeable, no duty can exist." *Id.* "[T]hough duty is always a question of law," the foreseeability of an injury can "turn[] on specific facts regarding what defendant[s] actually knew . . . or should have known" at the time of the alleged injury. *Id.* at 1099.

The Court does not believe that Defendants needed to possess any special powers of clairvoyance to foresee that manufacturing evidence, coercing a confession, or refusing to divulge exculpatory evidence would lead to an injury. The Court believes Defendants knew or actually should have known that—to name one example— creating a false police report to document a fabricated photo array identification was reasonably likely to lead to injury. *See Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) ("When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated "evidence" would be used to convict Avery at trial . . . That was, of course, the whole point of concocting the confession."). The Court holds that the injury was thus reasonably foreseeable.

### ii. Likelihood of the Injury

11

Illinois courts frame the second factor as a question of whether the injuries suffered as a result of defendants' conduct were "too remote or unlikely under the circumstances as a matter of law." *See Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 891 (Ill. 2012). Benitez alleges he suffered injuries, including 34 years in prison for a crime he did not commit, as the direct and intended consequence of Defendants' conduct. Again, a tainted conviction is the likely result of manufactured evidence, a coerced confession, and refusing to divulge exculpatory evidence. It cannot be said that the resulting injury is remote or unlikely. Further, Benitez alleges that two of the Defendants, Bogucki and Schalk, worked in the Area 5 Detective Division and engaged in similar misconduct in other investigations.

### iii. The Magnitude of the Burden of Guarding Against the Injury and the Consequences of Placing that Burden on the Defendants

Illinois courts consider the next two factors in tandem. *See, e.g., Ward v. Mid-Am. Energy Co.*, N.E.2d 861, 864 (2000); *Pryor v. Chicago Transit Auth.*, 219 N.E.3d 1115, 1126 (Ill. App. Ct. 2022). Courts may find that the magnitude of the burden of guarding against an injury weighs against finding the existence of a duty when imposing that duty would be "unreasonable" or "overly intrusive." *Morgan v. Dalton Mgmt. Co.*, 454 N.E.2d 57, 61 (Ill. App. Ct. 1983). Courts also weigh the public policy implications of finding that a duty exists. *Behrens v. Harrah's Illinois Corp.*, 852 N.E.2d 553, 556 (Ill. App. Ct. 2006).

In *Krywin*, an Illinois appellate court considered the magnitude and consequences of imposing a duty of care on the Chicago Transit Authority (the "CTA") to ensure

that all CTA train platforms were sufficiently free from snow and ice before a passenger egressed from the train. *Krywin v. Chicago Transit Auth.*, 909 N.E.2d 887, 893 (Ill. App. Ct. 2009). The court found that "[t]o impose such a duty on the CTA would be impractical" because it would require that the CTA prevent passengers from leaving "their trains until a CTA train operator and/or other employee ran around the platform, taking measurements to determine which portion of the platform currently had the least amount of snow or ice." *Id.* Because the "magnitude and consequences of imposing such a duty on the CTA would be overwhelmingly detrimental to the efficient performance of the transit system," the court declined find that that the duty existed. *Id.*

Similar concerns do not exist here. Imposing a duty to refrain from willful and wanton conduct in connection with an investigation would not require Defendants to take any additional actions or incur any additional costs. It instead requires only that Defendants refrain from affirmatively engaging in misconduct to wrongfully convict any individual. For example, Benitez alleges that Zacharias fabricated out of whole cloth a story that Benitez showed him an alley near the shooting where Benitez discarded the murder weapon. The complaint further alleges that Zacharias and other Police Officer Defendants wrote false police reports to document these false stories for the purposes of wrongfully convicting Benitez. Imposing a duty to refrain from such conduct would not create a burden for Defendants.

Defendants are also the appropriate party to place this burden on. Illinois and federal courts have already recognized that the state has a legal duty under either

13

the constitution or other federal statutes to refrain from the manner of willful and wanton conduct alleged here. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (discussing the circumstances in which police officers have a duty under 42 U.S.C. § 1983 to prevent fellow offices from infringing on citizens' constitutional rights); *Avery*, 847 F.3d at 443 (finding detectives liable for fabricating a confession in a murder investigation); *People v. Coleman*, 794 N.E.2d 275, 290 (Ill. 2002) (discussing the state's duty to disclose exculpatory evidence). The Court recognizes that the duties imposed on governmental actors by the constitution are different than the general rights and duties that flow from negligence law. But it cannot be said that imposing a duty on Defendants to refrain from the willful and wanton conduct alleged here would create any new burdens for Defendants in light of Defendants' existing legal obligations to refrain from that conduct.

In sum, the Court holds that the Individual Defendants each had a duty to refrain from willful and wanton conduct in connection with their investigation into the murders. The Court notes that its holding does not mean that any Defendants have breached that duty, nor does it establish any kind of scheme to breach that duty. Additionally, because Count IX is an aggravated negligence claim, no Defendant will ultimately be liable unless it is proven that they acted "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 887 (Ill. 2012).

## IV. Conclusion

For the stated reasons, Defendants' motion to dismiss [52] is denied.

14

E N T E R:

Dated: December 3, 2024

_____
MARY M. ROWLAND
United States District Judge